IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:17CR209-4 |
| | : | |
| v. | : | |
| | : | |
| DANYEL-ROY KIERAN | : | |
| LEMONS-KING | : | FACTUAL BASIS |

NOW COMES the United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and as a factual basis under Rule 11, Fed. R. Crim. P., states the following:

On March 29, 2017, JEHIEL ADARIE MCGOWAN was arrested by the Concord (N.C.) Police Department at the Best Buy store at Concord Mills, for attempting to purchase a mobile telephone using the Best Buy credit account of an identity theft victim. MCGOWAN was found to be in possession of two counterfeit driver's licenses bearing MCGOWAN'S photograph but names and dates of birth of two different identity theft victims, and of four counterfeit credit cards embossed with the names that were printed on the two counterfeit driver's licenses. Secret Service Special Agent Matt Hayes then interviewed MCGOWAN, who waived his Miranda rights and admitted to being involved in an identity theft/access device card conspiracy with several co-conspirators. MCGOWAN admitted that he had a counterfeit South Carolina driver's

license, which bore his photograph but had the name and date of birth of an identity theft victim whose initials are M.H. MCGOWAN said a co-conspirator made that counterfeit driver's license, and MCGOWAN described in detail how he conspired to perpetrate the fraud involving M.H.'s identity and financing of the 2014 Mercedes-Benz. MCGOWAN stated that his roommate, DANYEL-ROY KIERAN LEMONS-KING, and other co-conspirators possessed a printer that was capable of printing counterfeit driver's licenses and counterfeit access devices (here, credit cards). MCGOWAN also stated that he and his roommates used counterfeit driver's licenses and credit cards that were printed by other co-conspirators to open credit accounts at retail stores and mobile telephone stores, and to purchase and finance vehicles in identity theft victims' names. MCGOWAN was shown a printout of a report from a Florida-based 'data fusion' company now owned by a major credit-reporting bureau. MCGOWAN acknowledged seeing similar reports from that company, stating that the upper tier of this criminal enterprise bought access to a website for $20,000 that allowed them to research victim identities. MCGOWAN said that when he had a victim's identity, he would research the victim's credit score on publicly-accessible websites, looking for potential victims with credit scores above 700.

Based on the foregoing information from MCGOWAN and additional evidence discovered in the investigation, a Federal search warrant for the residence of MCGOWAN and others was obtained. On May 12, 2017, during execution of that search warrant, agents found MARCUS ALEXANDER ALLEN, VINCENT CHRISTOPHER BOURNE and DANYEL-ROY KIERAN LEMONS-KING in the residence, but JEHIEL ADARIE MCGOWAN was not present. Agents identified LEMONS-KING'S bedroom based on information an occupant of the home who is not believed to be part of the conspiracy but was located in the home during execution of the search warrant, and based on documents and correspondence bearing the name of LEMONS-KING found in this bedroom. In LEMONS-KING'S bedroom, agents found nine counterfeit South Carolina Driver's Licenses bearing LEMONS-KING'S photograph and identity information not belonging to LEMONS-KING, approximately eighty-three counterfeit credit cards, a credit card embossing machine, a Fargo printer capable of printing credit cards and driver's licenses, approximately thirty white plastic credit card blanks yet to be printed, and a magnetic stripe reader-writer. Other items found in LEMONS-KING'S bedroom related to the conspiracy to produce false identity documents were twelve counterfeit South Carolina driver's licenses, each bearing LEMONS-KING'S photograph but the names, addresses, dates of birth and license numbers of actual persons, to

include a person whose initials are K.C., and a person whose initials are C.A. The counterfeit access devices found included a NetSpend Visa debit card embossed with the name of K.C., and a Green Dot Visa debit card in the name of C.A.

Another bedroom of the residence was identified as that of ALLEN, because documents, correspondence, and a medicine container all bearing the ALLEN'S name were found in this bedroom. In addition, a genuine North Carolina Identification Card bearing ALLEN'S name and photograph were also found in a wallet in this specific bedroom. Other items found in ALLEN'S bedroom related to the conspiracy to produce false identity documents were (1) a counterfeit North Carolina driver's license bearing ALLEN'S photograph but the name, address, date of birth and license number of a person whose initials are W.T.B., a North Carolina resident, (2) a counterfeit South Carolina driver's license bearing ALLEN'S photograph but the name, address, date of birth and license number of a person whose initials are J.K.G., a South Carolina resident, and (3) a counterfeit access device (Capital One Visa card) embossed with the name matching J.K.G. cited above. A Capital One Visa debit card embossed with W.T.B.'s name was found in a bedroom associated with BOURNE.

4

Agents identified BOURNE'S bedroom based on documents and correspondence bearing BOURNE'S name being found in this bedroom. In BOURNE'S bedroom, agents found two counterfeit North Carolina Driver's Licenses and four counterfeit South Carolina Driver's Licenses, each bearing BOURNE'S photograph but with identity information of other actual persons. Among those were (1) a counterfeit North Carolina driver's license bearing BOURNE'S photograph but the name, address, date of birth and license number of a person whose initials are S.B., a Charlotte, North Carolina resident, (2) a counterfeit North Carolina driver's license bearing BOURNE'S photograph but the name, address, date of birth and license number of a person whose initials are E.Z., a Charleston, South Carolina resident. Agents also found twenty-four counterfeit credit cards in BOURNE'S room, including an American Express card embossed with S.B.'s name and a Capital One Visa card embossed with E.Z.'s name, twenty-one blanks white plastic cards, two magnetic stripe reader/writers, and an embossing machine.

Additionally, four counterfeit driver's licenses bearing MCGOWAN'S photograph but identity information of other actual persons were found in the residence, including two North Carolina licenses and six South Carolina licenses. Among those was a North Carolina driver's license with the identity information of a person whose initials are J.L.W., a resident of Huntersville,

N.C., and a South Carolina license with the identity information of a person whose initials are J.Y. There was also a counterfeit netSpend Visa debit card embossed J.L.W.'s name, and a counterfeit Major League Baseball Extra Bases MasterCard embossed with J.Y.'s name found by the agents.

The false identification documents (here, North and South Carolina driver's licenses) possessed by ALLEN, MCGOWAN, BOURNE and LEMONS-KING were used and possessed in relation to the conspiracy to produce false identification documents. The use and possession of those false identification documents was in or affecting interstate commerce, in that they were produced using actual identities obtained from the Florida-based data fusion company, as further researched on the internet by the co-conspirators to find credit scores, with the internet being a means of interstate commerce. Each of the financial institutions shown on the counterfeit access devices mentioned above does business in interstate commerce. Additionally, the objects of the conspiracy as described above in the interview with MCGOWAN included the use of false identification documents in conjunction with counterfeit access devices to purchase cellular phones from retailers including Best Buy, an American multi-national company based in Richfield, Minnesota, which operates in excess of one thousand stores inside and outside of the United States. In deciding whether the interstate commerce element is met in the

6

context of 18 U.S.C. § 1028, courts look to whether the intended criminal action, if completed, would affect interstate commerce in an adverse manner. *United States v. Villarreal*, 253 F.3d 831, 834–35 (5th Cir. 2001), citing *United States v. Pearce*, 65 F.3d 22, 25 (4th Cir.1995).

Co-defendants MARCUS ALEXANDER ALLEN, VINCENT CHRISTOPHER BOURNE and JEHIEL ADARIE MCGOWAN have each previously pleaded guilty to charges in the above-captioned matter, and have each been sentenced in this case.

This the 29th day of May, 2018.

>Respectfully submitted,
>MATTHEW G.T. MARTIN
>United States Attorney
>
>/s/ ANAND P. RAMASWAMY
>Assistant United States Attorney
>NCSB No. 24991
>United States Attorney's Office
>Middle District of North Carolina
>101 S. Edgeworth Street, 4th Floor
>Greensboro, North Carolina 27401
>Phone: (336) 333-5351

7

CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2018, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James Blake Norman, Esq.

> Respectfully submitted,
>
> MATTHEW G.T. MARTIN
> UNITED STATES ATTORNEY
>
>
> /S/ ANAND P. RAMASWAMY
> Assistant United States Attorney
> NCSB # 24991
> United States Attorney's Office
> Middle District of North Carolina
> 101 South Edgeworth Street, 4th Floor
> Greensboro, NC  27401
> Phone:  336/333-5351