# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **vs.** | ) | **PRESENTENCE INVESTIGATION REPORT** |
| | ) | |
| | ) | **Docket No.:   0418 1:17CR209-4** |
| **Danyel-Roy Kieran Lemons-King** | ) | |
| | ) | |

**Prepared for:**    The Honorable Thomas D. Schroeder
Chief United States District Judge

**Prepared by:**    Yashira M. Patton
Sentencing Guidelines Specialist
Greensboro, NC
336-291-1353
yashira_patton@ncmp.uscourts.gov

| **Assistant U.S. Attorney** | **Defense Counsel** |
|---|---|
| Anand Prakash Ramaswamy | James B. Norman |
| 101 S. Edgeworth St., 4th Floor | 3622 Shannon Rd., Ste. 104 |
| Greensboro, NC 27401 | Durham, NC 27707 |
| 336-333-5351 | 919-672-9592 |
| anand.ramaswamy@usdoj.gov | jblakenorman@gmail.com |

**Sentence Date:**    September 18, 2018 9:30 AM

**Offense:**    **Counts Eight and Nine**:
Aggravated Identity Theft
18 U.S.C. § 1028A(a)(1)
2 years mandatory imprisonment on each count, consecutive to any other sentence/$250,000 fine, or both, Class E Felonies

**Release Status:**    Arrested pursuant to a federal warrant on May 15, 2017, and released on May 23, 2017, with a $10,000 secured bond and pretrial supervision, including electronic monitoring. On July 2, 2017, he absconded from pretrial supervision and a warrant was issued on July 5, 2017. On April 3, 2018, the defendant was released from custody in South Carolina into federal custody pursuant to a federal warrant for the pretrial violations and detained in federal custody since that date.

**Detainers:**    None.

**Codefendants:**    Marcus Alexander Allen - 0418 1:17CR209-1
Jehiel Adarie McGowan - 0418 1:17CR209-2
Vincent Christopher Bourne - 0418 1:17CR209-3

**Related Cases:**    None.
**Identifying Data:**

**Date Report Prepared:** 8/6/18    **Date Report Revised:** 9/7/18

**Date of Birth:**     August 30, 1994
**Age:**               23
**Race:**              Black or African American
**Hispanic Origin:**   Non-Hispanic origin
**Sex:**               Male



**SSN#:**              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
**FBI#:**              242034WD8
**USM#:**              33869-057
**State ID#:**         NC1684846A
**PACTS#:**            3596513

**Education:**         High School Diploma (unverified)
**Dependents:**        None
**Citizenship:**       U.S. Citizen
**Country of Birth:**  United States
**Place of Birth:**    Queens, NY

**Legal Address:**     6709 Wicked Oak Lane
                       Charlotte, North Carolina 28216

**Residence Address:** No Fixed Address

**Alias(es):**         Also Known As: Fennell, Andrew
                       Also Known As: Fennell, Andrew Justin
                       Also Known As: Fredman, Michael
                       Also Known As: Perdue, Cory

**Alternate IDs:**     State ID Number: SC02296809
                       Alias DOB: 10/31/1988
                       Alias SSN/EIN: 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
                       NCDL#: 35942234

***Restrictions on Use and Redisclosure of Presentence Investigation Report.*** Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

## PART A. THE OFFENSE

### Charge(s) and Conviction(s)

1.     A federal grand jury for the Middle District of North Carolina returned a nine-count indictment on May 30, 2017, against Marcus Alexander Allen, Jehiel Adarie McGowan, Vincent Christopher Bourne, and **Danyel-Roy Kieran Lemons-King**. Count One charges that on or about May 12, 2017, in Cabarrus County, NC, the named defendants conspired to produce false identification documents, in violation of 18 U.S.C. §§ 1028(a)(1), (b)(1)(A), and (f).

2.     Count Two charges that on or about May 12, 2017, in Cabarrus County, NC, during and in relation to a felony, as alleged in Count One, Marcus Alexander Allen possessed and used without legal authority a means of identification of another person, that is, the name, driver license number, and date of birth of W.T.B., in violation of 18 U.S.C. § 1028A(a)(1). Count Three charges that on or about May 12, 2017, in Cabarrus County, NC, during and in relation to a felony, as alleged in Count One, Marcus Alexander Allen possessed and used without legal authority a means of identification of another person, that is, the name, driver license number, and date of birth of J.K.G., in violation of 18 U.S.C. § 1028A(a)(1).

3.     Count Four charges that on or about May 12, 2017, in Cabarrus County, NC, during and in relation to a felony, as alleged in Count One, Jahiel Adarie McGowan possessed and used without legal authority a means of identification of another person, that is, the name, driver license number, and date of birth of J.L.W., in violation of 18 U.S.C. § 1028A(a)(1). Count Five charges that on or about May 12, 2017, in Cabarrus County, NC, during and in relation to a felony, as alleged in Count One, Jahiel Adarie McGowan possessed and used without legal authority a means of identification of another person, that is, the name, driver license number, and date of birth of J.Y., in violation of 18 U.S.C. § 1028A(a)(1).

4.     Count Six charges that on or about May 12, 2017, in Cabarrus County, NC, during and in relation to a felony, as alleged in Count One, Vincent Christopher Bourne possessed and used without legal authority a means of identification of another person, that is, the name, driver license number, and date of birth of S.B., in violation of 18 U.S.C. § 1028A(a)(1). Count Seven charges that on or about May 12, 2017, in Cabarrus County, NC, during and in relation to a felony, as alleged in Count One, Vincent Christopher Bourne possessed and used without legal authority a means of identification of another person, that is, the name, driver license number, and date of birth of E.Z., in violation of 18 U.S.C. § 1028A(a)(1).

5.     Count Eight charges that on or about May 12, 2017, in Cabarrus County, NC, during and in relation to a felony, as alleged in Count One, **Danyel-Roy Kieran Lemons-King** possessed and used without legal authority a means of identification of another person, that is, the name, driver license number, and date of birth of C.A., in violation of 18 U.S.C. § 1028A(a)(1). Count Nine charges that on or about May 12, 2017, in Cabarrus County, NC, during and in relation to a felony, as alleged in Count One, **Danyel-Roy Kieran Lemons-King** possessed and used without legal authority a means of identification of another person, that is, the name, driver license number, and date of birth of K.C., in violation of 18 U.S.C. § 1028A(a)(1).

6.      A federal grand jury for the Middle District of North Carolina returned a 12-count superseding indictment on June 27, 2017, against Marcus Alexander Allen, Jehiel Adarie McGowan, Vincent Christopher Bourne, and **Danyel-Roy Kieran Lemons-King**. Counts One through Nine are the same as listed above in the original indictment. Count Ten charges that on or about May 12, 2017, in Cabarrus County, NC, Marcus Alexander Allen, having been convicted of a crime punishable by more than one year imprisonment, possessed a Romania Cai AK-47 7.62x39mm rifle, an SKS 7.62x39mm rifle, a Glock 9mm handgun, and a Glock .40 caliber handgun, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Eleven charges that on or about May 12, 2017, in Cabarrus County, NC, Vincent Christopher Bourne, having been convicted of a crime punishable by more than one year imprisonment, possessed a Armi Tanfoglio Giuseppe .25 caliber handgun, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Twelve charges that on or about May 12, 2017, in Cabarrus County, NC, **Danyel-Roy Kieran Lemons-King** with the intent to defraud possessed a device-making equipment, that is, a Fargo HDP5000 Printer, a credit card embossing machine, a magnetic stripe reader/writer, and approximately 20 white plastic cards, in violation of 18 U.S.C. §§ 1029(a)(4) and (c)(1)(a)(ii).

7.      On May 22, 2018, during the defendant's detention hearing, the defendant advised the Court his true name is Danyel-Roy Kieran Lemons-King. The defendant's name was then amended from Danyel-Roy Kier Lemons-King to Danyel-Roy Kieran Lemons-King in the official court record and will be referred to as such in this report.

8.      On June 11, 2018, Danyel-Roy Kieran Lemons-King pled guilty to Counts Eight and Nine of the superseding indictment, pursuant to a written Plea Agreement which includes the following provisions: The defendant agrees to pay restitution, as determined by the Court, to any victims harmed by the defendant's "relevant conduct," as defined by USSG §1B1.3, pursuant to 18 U.S.C. § 3663A(a)(3). Upon acceptance by the Court of the defendant's guilty plea to Counts Eight and Nine of the superseding indictment, and at the conclusion of the sentencing hearing, the United States will not oppose a motion to dismiss the remaining counts of the superseding indictment as to the defendant. This portion of the Plea Agreement is made pursuant to Rule 11(c)(1)(A) of the Federal Rules of Criminal Procedure. The defendant agrees that pursuant to 18 U.S.C. § 3613, all monetary penalties, including restitution imposed by the Court, shall be due immediately upon judgment and subject to immediate enforcement by the United States. The defendant agrees that if the Court imposes a schedule of payments, the schedule of payments shall be merely a schedule of minimum payments and shall not be a limitation on the methods available to the United States to enforce judgment. If the defendant is indigent and cannot pay the $100 special assessment for each offense of conviction at the time of sentencing, the defendant agrees to participate in the Inmate Financial Responsibility Program for purposes of paying such assessment.

**Codefendants**

9.      Marcus Alexander Allen (1:17CR209-1) pled guilty to Counts Two and Three of the superseding indictment. He was sentenced on December 14, 2017, to 36 months imprisonment (24 months imprisonment on each count with 12 months to run consecutive).

10.     Jehiel Adarie McGowan (1:17CR209-2) pled guilty to Counts Four and Five of the superseding indictment. He was sentenced on March 20, 2018, to 36 months imprisonment (24 months on each count with 12 months to run consecutive).

11.     Vincent Christopher Bourne (1:17CR209-3) pled guilty to Counts Six and Seven of the superseding indictment. He was sentenced on October 27, 2017, to 36 months imprisonment (24 months imprisonment on each count with 12 months to run consecutive).

**Pretrial Adjustment**

12.     Danyel-Roy Kieran Lemons-King was arrested on May 15, 2017, and released on May 23, 2017, with a $10,000 secured bond and pretrial supervision, which included electronic monitoring. The defendant was supervised by the Western District of North Carolina as the defendant was residing with his legal guardian, Marilyn Smith, at 6709 Wicked Oak Lane, Charlotte, NC. On July 2, 2017, the defendant removed his electronic monitoring device and absconded. A warrant for his arrest was issued on July 5, 2017. The defendant was arrested on April 4, 2018, in South Carolina pursuant to a federal warrant for the pretrial violations and detained since that date. *(Note: This information was corroborated by the United States Marshal Service for the Middle District of North Carolina, as well as the Lexington County Detention Center, Lexington, SC.)* During the presentence interview, the defendant stated he left the residence because of the "built up tension" with his legal guardian. He indicated he felt "closed in" as he could not use a phone or play video games because it required internet service. He advised he left "instead of getting into an altercation" with his legal guardian. He stated that his thoughts at the time were: "I'm sitting here. Probation hasn't even checked on me. They aren't worried about me." He further stated, "I was just trying to get away from [my legal guardian]. I wasn't thinking of the consequences." The defendant's legal guardian stated the defendant told his younger foster brother "a bunch of negative things" about her. The defendant's actions have caused Marilyn Smith's relationship with her youngest foster son to be strained. Marilyn Smith further indicated the defendant had not apologized to her for "almost sticking [her] with a $10,000 bond."

**The Offense Conduct**

13.     On March 29, 2017, Jehiel McGowan was arrested by the Concord Police Department, Concord, NC, at Best Buy, 8210 Concord Mills Blvd., Concord, NC, for attempting to purchase a mobile telephone using the Best Buy credit account of an identity theft victim. Jehiel McGowan was found to be in possession of two counterfeit driver's licenses bearing Jehiel McGowan's photograph, but names and dates of birth of two different identity theft victims. Additionally, four counterfeit credit cards embossed with the names were printed on the two counterfeit driver's licenses.

14.     Agents with the United States Secret Service interviewed Jehiel McGowan on March 29, 2017, and March 31, 2017. Jehiel McGowan waived his *Miranda* rights on both occasions and admitted to being involved in an identity theft/access device card conspiracy with several co-conspirators. Jehiel McGowan admitted he had a counterfeit South Carolina driver's license, which bore his photograph, but had the name and date of birth of an

identity theft victim whose initials were M.H. Jehiel McGowan stated he and a co-conspirator made the aforementioned counterfeit driver's license. Jehiel McGowan described in detail how he conspired to perpetrate the fraud involving M.H.'s identity and financing of a 2014 Mercedes-Benz. Jehiel McGowan stated his roommate, **Danyel-Roy Kieran Lemons-King**, and other co-conspirators possessed a printer that was capable of printing counterfeit driver's licenses and counterfeit access devices (credit cards).

15.     Jehiel McGowan stated he lived at 8307 Hallowford Drive, Huntersville, NC, with **Danyel-Roy Kiernan Lemons-King**, Cortez Reeves, Marcus Allen, and Vincent Bourne. Jehiel McGowan also stated that he and his roommates used counterfeit driver's licenses and credit cards that were printed by other co-conspirators to open credit accounts at retail stores and mobile telephone stores. He stated they also purchased and financed vehicles in identity theft victims' names. Jehiel McGowan was shown a printout of a report from a Florida-based 'data fusion' company now owned by a major credit reporting bureau. Jehiel McGowan acknowledged seeing similar reports from that company, stating that the upper tier of this criminal enterprise bought access to a website for $20,000 that allowed them to research victim identities. Jehiel McGowan stated when he had a victim's identity, he would research the victim's credit score on publicly-accessible websites, looking for potential victims with credit scores above 700.

16.     On April 1, 2017, a U-Haul moving van was rented with the identity of C.H. The address used for the rental was 8307 Hallowford Drive, Huntersville, NC.

17.     On April 4, 2017, agents traced the purchase of the 2014 Mercedes-Benz previously mentioned. Agents discovered that on March 18, 2017, **Danyel-Roy Kieran Lemons-King** purchased the vehicle from Allan Vigil Ford Lincoln, 6790 Mt. Zion Boulevard, Morrow, Georgia. The investigation of the purchase revealed Jehiel McGowan, using the identity of M.H., cosigned for the vehicle. The vehicle was released to **Danyel-Roy Lemons-King** after making a $500 down payment. Sometime after the vehicle was released to **Danyel-Roy Lemons-King**, the fraud was detected and the financing was canceled.

18.     Jehiel McGowan contacted the agents in April 2017 and informed them he and **Danyel-Roy Lemons-King** moved to 3360 Merchant Lane, Davidson, NC, which is located in Cabarrus County, NC.

19.     On April 28, 2017, U-Haul reported the 2007 Ford Truck with VIN number: 1FDXE45S77DB17168 as stolen. On May 4, 2017, agents with the assistance of the Kannapolis Police Department, Kannapolis, NC, recovered the U-Haul, which was abandoned within walking distance of the subjects' residence. A search of the van produced a receipt dated April 17, 2017, for a pick up at Walmart, 169 Norman Station Boulevard, Mooresville, NC. The name on the receipt was S.B. Investigators later determined Vincent Bourne, used the identity of S.B., to purchase two iPhones from a T-Mobile located in Rock Hill, SC.

20.     Prior to obtaining a search warrant for the residence of the subjects, agents determined the residence was leased using the identity of C.O. On May 12, 2017, agents executed a search

warrant at 3360 Marchant Lane, Davidson, NC, located in Cabarrus County, NC. Marcus Allen, Vincent Bourne, and **Danyel-Roy Kieran Lemons-King** were present inside the residence during the execution of the warrant. In one bedroom, agents found the following: one North Carolina and one South Carolina counterfeit driver's license bearing Marcus Allen's photograph, but the identity information for W.T.B. and J.K.G.; and a counterfeit access device (Capital One Visa card) embossed with the name J.K.G.

21.    In the same room, agents found two North Carolina and six South Carolina counterfeit driver's licenses bearing Jehiel McGowan's photograph, but the identity information for J.L.W., R.M.M., N.C., C.S., O.R., G.M., P.W., and J.Y. There was also a counterfeit NetSpend Visa debit card embossed with J.L.W.'s name, and a counterfeit Major League Baseball Extra Bases MasterCard embossed with J.Y.'s name. Additionally, in the closet of the bedroom, agents discovered four firearms: an AK-47 Romania Cai Georgia/Vermont with serial number AI33867; an SKS with serial number on the bolt HO2994 and serial number on the upper part of CCCP15316; a 9mm Glock pistol with serial number ABRV311; and a .40 caliber Glock pistol with serial number AAMZ244. According to investigative reports, the .40 caliber Glock was reported stolen from Gastonia, NC.

22.    In another bedroom, agents found two North Carolina and five South Carolina counterfeit driver's licenses bearing Vincent Bourne's photograph, but the identity information for S.B., B.K.G., W.T., J.S., E.Z., R.M., and R.D. The agents also found the following: credit cards embossed with the names of 23 different individuals, including an American Express card embossed with S.B.'s name, a Capital One Visa card embossed with E.Z.'s name, and a Capital One Visa debit card embossed with W.T.B.'s name; a counterfeit Social Security card in the name of C.S.P.; 21 blank white plastic cards; two magnetic stripe reader/writers; an embossing machine; and a .25 Armi Tanfoglio Giuseppe firearm with serial number M153107.

23.    In the last bedroom, agents found 12 South Carolina counterfeit driver's licenses bearing **Danyel-Roy Lemons-King's** photograph, but the identity information for R.R., K.C., D.L., D.G., C.A., M.L., N.W., J.W., J.W., J.B., M.B., and D.B. The search of his room produced approximately 83 counterfeit credit cards, a credit card embossing machine, a Fargo HDP 5000 printer, approximately 30 blank white plastic credit cards, and a magnetic stripe reader-writer. *(Note: The Fargo HDP5000 printer is capable of printing credit cards and driver's licenses.)* The counterfeit access devices found included a NetSpend Visa debit card embossed with the name of K.C., and a Green Dot Visa debit card in the name of C.A. Additionally, the search of the room produced a .38 Smith and Wesson firearm with serial number CWY8656. According to investigative reports, the aforementioned firearm was reported stolen in Charlotte, NC.

24.    Inside the Mercedes-Benz, agents found one North Carolina and two South Carolina counterfeit driver's licenses bearing **Danyel-Roy Lemons-King's** photograph, but the identity information for T.M., C.C.H., and C.M. The agents also found five counterfeit credit cards embossed with C.M.'s name.

**<u>Victim Impact</u>**

25.    The provisions of the Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense. W.T.B., J.K.G., J.L.W., J.Y., S.B., E.Z., C.A., and K.C. have been identified as the victims in this case. As of the writing of this report, the victims have not responded nor submitted a Declaration of Victim Losses. According to the government, none of the victims have suffered a financial loss.

26.    Although there is no financial loss in this case, these types of cases require the victims to take additional steps to protect their credit. Many times victims have to spend large amounts of time contacting different agencies to close accounts, remove fraudulent charges, and restore their credit. Additionally, many victims have to pay to obtain an identity theft protection program in order to avoid further losses due to the identity theft.

**Adjustment for Obstruction of Justice**

27.    The probation officer has no information indicating the defendant impeded or obstructed justice.

**Adjustment for Acceptance of Responsibility**

28.    The defendant was interviewed by this probation officer on June 15, 2018, while in the presence of counsel. Defendant Lemons-King provided a verbal statement wherein he agreed with the Factual Basis with no objections and admitted involvement in the offense. Notwithstanding the defendant's admission of guilt, the defendant, as noted in the *Pretrial Adjustment* section, violated his conditions of pretrial release by removing the electronic monitoring device and absconding.

**Offense Level Computation**

29.    The 2016 Guidelines Manual, incorporating all guideline amendments, was used to determine the defendant's offense level. USSG §1B1.11.

**Counts Eight and Nine**: **Aggravated Identity Theft**

30.    The guideline for a violation of 18 U.S.C. § 1028A is found in USSG §2B1.6. According to USSG §2B1.6(a), the guideline sentence is the term of imprisonment required by statute; therefore, the guideline sentence is two years on each count. The adjustments from Chapters Three (Adjustments) and Four (Criminal History and Criminal Livelihood) of the guidelines manual are not applied because the sentence is determined only by the relevant statute. USSG §2B1.6, comment.(n.3).

**Offense Behavior Not Part of Relevant Conduct:**

31.    None.

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

### Juvenile Adjudication(s)

32.    None known.

### Adult Criminal Conviction(s)

| | **Date of Arrest** | **Conviction/Court** | **Date Sentence Imposed/Disposition** |
|---|---|---|---|
| 33. | 08/04/2013 (Age 18) | Misd. Shoplifting Concealment Goods Docket No. 13CR 231538 Mecklenburg County District Court, Charlotte, NC | 12/17/2013: 10 days imprisonment, suspended. 12 months unsupervised probation. |

The defendant was originally charged with Misdemeanor Larceny, but pled guilty to the offense noted above. Computerized court records reflect the defendant waived attorney representation. According to the original warrant, on August 4, 2013, the defendant stole six hats, a shirt, and a pair of pants from Belk, 7115 Northlake Mall Driver, Charlotte, NC. As part of his sentence, the defendant was banned from Belk's and Northlake Mall. A related charge of Misdemeanor Assault and Battery (13CR 231539) was voluntarily dismissed. According to the warrant, on August 4, 2013, the defendant allegedly assaulted Donnie Yates by punching the victim in the chest.

| | | | |
|---|---|---|---|
| 34. | 11/04/2015 (Age 21) | Misd. Allow Unlicensed to Drive Docket No. 15CR 717186 Cabarrus County District Court, Concord, NC | 11/04/2015: Pay court costs and fine. |

Computerized court records reflect the defendant pled guilty and was represented by counsel, Ben Allen Cox. The offense occurred on November 4, 2015. A related charge of Misdemeanor Permit Operation of Vehicle with No Insurance was voluntarily dismissed.

| | | | |
|---|---|---|---|
| 35. | 01/16/2016 (Age 21) | Misd. Reckless Driving with Wanton Disregard Docket No. 15CR 242302 Mecklenburg County District Court, Charlotte, NC | 04/21/2017: Prayer for judgment continued upon payment of court costs. |

The defendant was originally charged with Misdemeanor Hit and Run, but pled guilty to the lesser offense noted above. Computerized court records reflect the defendant waived attorney representation. According to the original warrant, on November 22, 2015, the defendant, who was the driver of a vehicle involved in the accident, fled the scene on foot and failed to leave the required documentation. The accident caused bodily injury and required the victims to be hospitalized.

| 36. | 07/22/2017 (Age 22) | 1) Misd. Failure to Obey Officer Docket No. 20171560005554 2) Misd. Assault and Battery-3rd Degree Docket No. 20171560005555 3) Misd. Resisting Arrest Docket No. 20171560005556 4) Misd. Disorderly Conduct Docket No. 20171560005557 5) Misd. Providing False Information Docket No. 20171560005558 Lexington Municipal Court, Lexington, SC | 08/24/2017: 1-2) 30 days imprisonment or $1,087.50 fine, on each count. 3) 30 days imprisonment or $1,087.50 fine. Sentence to run consecutive. 4) 30 days imprisonment or $1,087.50 fine. Sentence to run consecutive. 5) 30 days imprisonment or $1,087.50 fine. Sentence to run consecutive. 04/04/2018: Release to federal detainer. |
| --- | --- | --- | --- |

Court records reflect the defendant pled guilty, but made no mention regarding attorney representation. The offenses occurred on July 22, 2017. Further information regarding the offense conduct is unavailable. The defendant was charged as Andrew Justin Fennell.

37.    A criminal record check revealed a conviction that occurred on January 18, 2016, in Forsyth County, NC, for Speeding (16IF 701339). The offense resulted in the payment of fines and/or court costs. No criminal history points are assessed. USSG §4A1.2(c)(2).

**Other Criminal Conduct**

38.    None known.

**Pending Charges**

39.    None.

**Other Arrests**

| | **Date of Arrest** | **Charge** | **Agency** | **Disposition** |
|---|---|---|---|---|
| 40. | 03/27/2007 (Age 12) | Misd. Simple Assault NCJOIN No. 824902 | Mecklenburg County District Court (Juvenile), Charlotte, NC | 04/26/2007: Closed. |

The alleged offense occurred on March 8, 2007, and the victim was Travell Giles. According to North Carolina Department of Public Safety (DPS)-Juvenile Division, the defendant met with a court counselor on April 10, 2007, regarding this incident. During the intake interview, the defendant admitted he punched the victim. He told the court counselor that there were several other individuals also involved in the incident. The defendant received a ten-day out-of-school suspension due to this incident.

| | | | | |
|---|---|---|---|---|
| 41. | 12/15/2013 (Age 19) | Misd. Simple Assault Docket No. 13CR 244597 | Mecklenburg County District Court, Charlotte, NC | 05/15/2014: Voluntarily dismissed. |

On October 10, 2013, the defendant allegedly assaulted Adin Cox by punching the victim about the face and upper body, as well as striking the victim with his knee.

| | | | | |
|---|---|---|---|---|
| 42. | 07/26/2017 (Age 22) | Felony Obtain Property under False Pretenses with a value of more than $2,000, but less than $10,000 Docket No. 2017A3220500388 | Lexington County General Session, Lexington, SC | 08/25/2017: Nolle Prosequi. |

The offense date is unknown. The defendant was charged as Andrew Justin Fennell.

43.  A criminal record check revealed citations/arrests that allegedly occurred between 2016 and 2017, in Mecklenburg County, NC, for Misdemeanor Possess/Manufacture Fraudulent Identification, Misdemeanor Resisting a Public Officer, Speeding, and Misdemeanor Driving While License Revoked. These charges were voluntarily dismissed.

## PART C. OFFENDER CHARACTERISTICS

**Personal and Family Data**

44.  Danyel-Roy Kieran Lemons-King, as verified by his legal guardian, was born on August 30, 1994, in Queens, NY, to Krystal Lemons. According to the defendant's legal guardian, Marilyn Smith, no father is listed on the birth certificate. However, the defendant

reported his biological father is Frank Lemons. Marilyn Smith advised the defendant was born out of an incestuous relationship between Frank and Krystal Lemons, who are brother and sister. Additionally, Marilyn Smith advised Frank Lemons is her ex-husband. Marilyn Smith was contacted telephonically on July 17, 2018, and corroborated the defendant's personal history and familial ties.

45.     Defendant Lemons-King advised having the following siblings: Ahmond Lemons, maternal half-brother, age 39; Sydel Lemons, maternal half-brother, age 38; Tokay Lemons, maternal half-sister, age 33; Cassel Lemons, paternal half-brother, age 30's; Teddy Lemons, paternal half-brother, age 30's; Nia Brown, adopted sister, age 27; Darnea Pierre, paternal half-brother, age 24; Ayan Lemons, maternal half-brother, age 18; and Jamon Smith, foster brother, age 12. The defendant indicated Cassel and Nia reside in Charlotte, NC. Jamon resides with the defendant's legal guardian, Marilyn Smith, at 6709 Wicked Oak Lane, Charlotte, NC. The defendant was unaware of the whereabouts of the remaining siblings.

46.     The defendant was born while his biological mother was incarcerated at Riker's Island, NY. According to mental health records, the defendant tested positive for cocaine at the time of his birth. Mental health records also noted the defendant's mother had a history of schizophrenia and kleptomania. After the defendant's birth, authorities placed the defendant with his father. The defendant's father kept the defendant for approximately one year. The defendant stated that during the timeframe he lived in New York, he spent weekends with his father and visited his mother occasionally. He then placed the defendant in foster care because it caused issues in his relationship with another woman. Marilyn Smith indicated she became aware of the placement and sought guardianship of the defendant. Marilyn Smith stated she reared the defendant as her own child. Defendant Lemons-King described having a good childhood and indicated he was reared in a single-parent household. He denied any form of abuse within the family unit and advised all his basic necessities were met during his formative years.

47.     In 2005, Marilyn Smith advised she had the parental rights of Krystal Lemons terminated by the court. She then moved to Charlotte, NC, with the defendant and her children. According to the defendant, he last had contact with his father when he was 15 years old. Marilyn Smith stated she threw the defendant out of the residence when he was a teenager because he refused to follow the rules and kept sneaking out of the house. The defendant indicated he resided with his older brother, Cassel Lemons, during this timeframe. Mental health records reflect the defendant had numerous behavior issues at school and home, including running away from home on more than one occasion. Defendant Lemons-King has never married nor had children.

48.     At the time of the instant offense, the defendant reported he was residing in Charlotte, NC. As noted in the *Offense Conduct*, the defendant was residing at 8307 Hallowford Drive, Huntersville, NC, during the course of the instant offense. Upon his release from imprisonment, the defendant wishes to return to the residence of Marilyn Smith. However, Marilyn Smith notified this probation officer that the defendant could not return to her residence due to his recent behavior which has negatively affected her youngest foster child. Furthermore, she indicated the defendant absconded federal pretrial supervision

while residing in her residence. Due to the aforementioned factors, a home investigation was not conducted. The defendant does not have a suitable release plan and may need emergency housing upon his release.

49.   During the presentence interview, this officer and the defendant discussed what the defendant believed would allow him to be successful during his future term of supervised release. The defendant expressed a desire to become a basketball trainer. We discussed at length the feasibility of his future career goal and the defendant verbalized the steps he needed to take to achieve his goal. Additionally, the defendant reported having the following positive support group in his life: Bryan Anderson, a neighbor; Coach Blackburn, his high school basketball coach; and Samuel Howell, his first supervisor at the Young Men's Christian Association (YMCA).

### Physical Condition

50.   Defendant Lemons-King stands 5'10" tall, weighs 208 pounds, and has brown eyes and dark brown hair. He reported having a scar on his elbow and numerous tattoos on both arms. On his right arm, he reported having a skull with an Egyptian mask, a hand, "Live Life Lavish," and a rose with "Live." On his left arm, he advised having "Life," an hourglass with a clock and a female, a rose, and "Nyla Marie Brown" (his niece). The defendant denied any of the aforementioned tattoos were gang-related.

51.   Regarding his physical condition, the defendant advised he was treated for injuries sustained in a vehicular accident when he was four years old and for sports-related injuries when he was a teenager. Marilyn Smith indicated the defendant suffered a brain hemorrhage and two broken legs due to the accident. She stated the whole family was treated for serious injuries and she suffered temporary paralysis to one side of her body. Marilyn Smith is unsure if the defendant suffered any lasting effects due to the brain injury. DPS-Juvenile Division and mental health records reflect the defendant was diagnosed with Traumatic Brain Injury due to the aforementioned accident.

### Mental and Emotional Health

52.   Danyel-Roy Lemons-King disclosed a history of mental illness and treatment. He advised he was diagnosed in the fifth grade with Attention Deficit Hyperactivity Disorder (ADHD) and mood swings. He indicated he was prescribed Depakote and Adderall to treat the aforementioned conditions. The defendant reported he received mental health treatment at North Carolina Neuropsychiatry, Charlotte, NC. Mental health records reflect the defendant received treatment at North Carolina Neuropsychiatry between July 8, 2008, and June 13, 2017. The defendant was evaluated on July 8, 2008, and received the following diagnoses:

> Axis I: Conduct Disorder, ADHD, r/o PTSD, r/o Intermittent Explosive Disorder
> Axis II: None
> Axis III: History of Traumatic Brain Injury.
> Axis IV: Academic, peer, home, early childhood adversity.
> Axis V: 40

53.    As part of the evaluation, the defendant completed a computerized cognitive test and he scored as follows: verbal memory- 93 (average), visual memory- 102 (average), processing speed- 111 (above average), executive functioning- 76 (low), psychomotor speed (invalid), reaction time (invalid), complex attention (invalid), and cognitive flexibility- 61 (very low). The defendant's mental health records noted a history of lying, stealing, running away, fire setting, and possible instances of stalking and sexual misconduct. The impressions of the clinician at the defendant's initial evaluation were as follows: "The patient presents with antisocial tendencies and strong externalizing patterns due to early neglect, intrauterine exposure, familial psychiatric illness, and possibly head injury. At this stage, some of his actions seem socially naïve rather than calculated and predatory. He does seem to respond to the stronger structure at home." Mental health records further noted the defendant received Exceptional Children (EC) services at school for being Behaviorally Emotionally Disabled. At his last mental health visit, the defendant's diagnosis was ADHD and Intermittent Explosive Disorder. According to mental health records, on June 13, 2017, the defendant was prescribed Depakote 1000 mg and Adderall XR 30 mg. The defendant advised he stopped taking the aforementioned medications in 2017. Defendant Lemons-King expressed no desire to participate in future mental health treatment. He stated, "I am fine."

## Substance Abuse

54.    Defendant Lemons-King acknowledged a limited history of alcohol and substance use. The defendant reported he drank alcohol a few times when he was 21 years old. He stated, "I don't drink. I don't like it." The defendant reported he smoke marijuana on four occasions in his life with his last use being when he was 22 years old. He denied the use of any other illegal substances and advised he has never received substance abuse treatment. The defendant expressed no desire to participate in substance abuse treatment in the future.

## Educational, Vocational and Special Skills

55.    Danyel-Roy Lemons-King, as verified by his legal guardian, graduated from West Mecklenburg High School, Charlotte, NC, in 2013. As noted previously, the defendant received EC services during his formative years. The defendant stated he received services from the fifth to ninth grade due to his behavior. He stated he did well with the curriculum, but he got in trouble in class when he finished his assignments early and got bored. Records received from North Carolina Neuropsychiatry and DPS-Juvenile Division corroborated the defendant received EC services and noted the defendant had a history of behavior issues at school, including suspensions.

56.    After high school, the defendant stated he attended Central Piedmont Community College (CPCC), Charlotte, NC. A response received from CPCC noted the defendant enrolled in courses, but never attended. The defendant reported he received a CPR and First Aid certificate in 2015.

57.    Defendant Lemons-King indicated that at some point after he graduated from high school, he volunteered at Coulwood Middle School, Charlotte, NC, and mentored Kenneth

Gregory during the basketball season. The defendant also indicated that he has provided basketball training to his nephews and foster brother.

58.     The defendant expressed a desire to enroll in vocational courses provided by the BOP. He showed a particular interest in the culinary arts and teacher's aide program. The defendant indicated he was interested in culinary courses after he worked at Cuzzo's Cuisine, Charlotte, NC. He also indicated he was interested in the teacher's aide program due to his past experience mentoring a middle school student.

**Employment Record**

59.     Defendant Lemons-King is currently imprisoned and unemployed. He advised he was employed at Hendrix Chrysler, Dodge, Jeep, and Ram of Concord, Concord, NC, as a car detailer from September 2016 to October 2016. The defendant indicated his salary varied because he was paid based on the vehicles he detailed. According to the defendant, this position ended when he stopped reporting to work due to transportation issues. However, mental health records reflect the defendant told staff he quit because "it got too cold to wash cars outside." *Employment records have been requested; however, a response was not received by the writing of this report.* The defendant's legal guardian corroborated this employed.

60.     The defendant reported he was employed at McCrorey YMCA, Charlotte, NC, as a referee from 2014 to October 2016. The defendant indicated he stopped working at the YMCA when they had a change in management. A response received from the YMCA reflects the defendant was employed from February 20, 2014, to February 9, 2016, as a youth sports staff, and earned $8.24 hourly. According to employment records, the defendant was terminated after he had not worked 120 days, but advised the defendant is eligible for rehire.

61.     Defendant Lemons-King indicated he was employed at Cuzzo's Cuisine Food Truck, Charlotte, NC, as a crew member during the summers of 2015 and 2016. The defendant stated he earned $8 hourly. According to the defendant, he resigned as he had two other jobs (Hendrix and YMCA). A response received from Cuzzo's Cuisine indicated they had no employment records for the defendant.

62.     The defendant did not report any further history of gainful employment.

**Financial Condition: Ability to Pay**

63.     Financial information was obtained from a signed personal financial statement submitted by the defendant on June 15, 2018, and verified by reviewing an Equifax credit report, an Accurint report, North Carolina Department of Motor Vehicle (DMV) records, and public records. As the defendant is currently incarcerated, he reported having no monthly income or payments. The defendant denied having any assets or liabilities. A review of the defendant's credit report revealed a collection from DCI for Sprint in the amount of $2,531. DMV records indicate the defendant has no registered vehicles in his name.

64.     The defendant does not appear to have the financial resources to make an immediate
        monetary payment. However, if imprisoned, payments toward financial sanctions may be
        collected by the Federal Bureau of Prisons through the Inmate Financial Responsibility
        Program. Any remaining balance can be paid during the term of supervised release.


## PART D. SENTENCING OPTIONS

### Custody

65.     **Statutory Provisions:** Counts Eight and Nine: The term of imprisonment is a mandatory
        two years on each count and must be imposed consecutively to any other counts. 18 U.S.C.
        § 1028A(a)(1).

66.     *In the case of multiple convictions under 18 U.S.C. § 1028A, the Court may impose a term
        of imprisonment, in its discretion, to run concurrently, in whole or in part, with each other.
        18 U.S.C. § 1028A(b)(4).*

67.     **Guideline Provisions:** Counts Eight and Nine: A mandatory consecutive term of two years
        imprisonment on each count is required by statute.

68.     *Pursuant to 18 U.S.C. § 1028A(b)(4), The Court, in its discretion, may impose the
        mandatory term of imprisonment on a defendant for a violation of such section
        "concurrently, in whole or in part, only with another term of imprisonment that is imposed
        by the court at the same time on that person for an additional violation of this section,
        provided that such discretion shall be exercised in accordance with any applicable
        guidelines and policy statements issued by the Sentencing Commission…" USSG §5G1.2,
        comment. (n.2(B)).*

### Impact of Plea Agreement

69.     Had the defendant also pled to Count One and/or Count Twelve, the sentences imposed in
        Counts Eight and Nine would have been consecutive to the term of imprisonment imposed
        in Count One and/or Count Twelve.

### Supervised Release

70.     **Statutory Provisions:** Counts Eight and Nine:The Court may impose a term of supervised
        release of not more than one year on each count. 18 U.S.C. § 3583(b)(3). Multiple terms
        of supervised release shall run concurrently. 18 U.S.C. § 3624(e).

71.     **Guideline Provisions:** Counts Eight and Nine: Since the offense is a Class E Felony, the
        guideline range for a term of supervised release is one year on each count. USSG
        §5D1.2(a)(3).

**Probation**

72. **Statutory Provisions:** <u>Counts Eight and Nine</u>: The defendant is ineligible for probation because it is expressly precluded by statute. 18 U.S.C. § 3561(a)(2).

73. **Guideline Provisions:** <u>Counts Eight and Nine</u>: The defendant is ineligible for probation because probation has been expressly precluded by statute. USSG §5B1.1(b)(2).

**Fines**

74. **Statutory Provisions:** <u>Counts Eight and Nine</u>:The maximum fine on each count is $250,000. 18 U.S.C. § 3571(b). <u>Counts Eight and Nine</u>: A special assessment of $100 is mandatory on each count. 18 U.S.C. § 3013.

75. **Guideline Provisions:** <u>Counts Eight and Nine</u>: There is no conviction for an underlying offense. In such unusual cases, the Sentencing Commission has not established a guideline fine range, although a fine is authorized under 18 U.S.C. § 3571.

76. Costs of prosecution shall be imposed on the defendant as required by statute. USSG §5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed. USSG §5E1.2(d)(7) and 18 U.S.C. § 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated July 13, 2017, provides the following monthly cost data:

|  | **Bureau of Prisons Facilities** | **Community Correction Centers** | **Supervision by Probation Officer** | **Supervision by Pretrial Services Officer** | **Pretrial Detention** |
|---|---|---|---|---|---|
| Daily | $95.00 | $80.00 | $12.00 | $11.00 | $87.00 |
| Monthly | $2,898.00 | $2,440.00 | $366.00 | $336.00 | $2,654.00 |
| Annually | $34,770.00 | $29,280.00 | $4,392.00 | $4,026.00 | $31,842.00 |

**Restitution**

77. **Statutory Provisions:** According to the government, no victims have been identified as having suffered a financial loss. Therefore, there is no restitution.

78. **Guideline Provisions:** None.

**Denial of Federal Benefits**

79. **Statutory Provisions:** None.

80. **Guideline Provisions:** None.

**PART E. FACTORS THAT MAY WARRANT DEPARTURE**

81.     The probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range.

**PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM**

82.     The probation officer has not identified any factors which, under 18 U.S.C. § 3553(a), would warrant a sentence outside of the advisory guideline range.

Respectfully Submitted,
Melissa A. Alexander
Chief U.S. Probation Officer

By:   Yashira M. Patton
         Sentencing Guidelines Specialist

Approved:

Odessa H. Baker                                                    09/07/2018
Supervisory U.S. Probation Officer                          Date

# SENTENCING RECOMMENDATION

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## UNITED STATES V. DANYEL-ROY KIERAN LEMONS-KING, DKT. 0418 1:17CR209-4

|  | **Statutory Provisions** | **Guideline Provisions** | **Recommended Sentence** |
|---|---|---|---|
| **CUSTODY:** | Cts. 8 & 9: 2 years mandatory on each count | 2 years mandatory on each count | 2 years mandatory on each count and consecutive to each other |
| **SUPERVISED RELEASE:** | Cts. 8 & 9: NMT 1 year on each count | 1 year on each count | 1 year on each count, concurrent |
| **PROBATION:** | Cts. 8 & 9: Precluded | Precluded | Precluded |
| **FINE:** | Cts. 8 & 9: $250,000 on each count | No fine range established by guidelines | Not Recommended |
| **RESTITUTION:** | Cts. 8 & 9: None | None | None |
| **SPECIAL ASSESSMENT:** | Cts. 8 & 9: $200 | $200 | $200 |

*\* In the case of multiple convictions under 18 U.S.C. § 1028A, the Court may impose a term of imprisonment, in its discretion, to run concurrently, in whole or in part, with each other. 18 U.S.C. § 1028A(b)(4).*

## Justification:

It is recommended the mandatory sentences run consecutively to each other. Defendant Lemons-King is 23 years old and has a limited criminal history. Due to his young age, the defendant does not have a long employment history. The instant offense involves the financial identity theft of numerous victims. Additionally, the *Offense Conduct* reflects the defendant fraudulent purchased a vehicle by knowingly allowing Jehiel McGowan, a codefendant, who was using the identity of M.H., to cosign for the vehicle. Lastly, on July 2, 2017, while on courtesy supervision in the Western District of North Carolina, the defendant cut his electronic monitoring anklet and absconded.

In mitigation, the defendant had a traumatic childhood and has ongoing mental health issues. He also verbalized future goals, which will place him on the right path to a successful term of supervised release. Although the defendant's relationship with his legal guardian is strained, he noted having numerous positive role models in his life.

Due to the defendant's history of mental illness and substance abuse, it is recommended the defendant receive a psychological evaluation along with mental health and substance abuse treatment while in the custody of the Federal Bureau of Prisons.

As the instant offense involved identity theft, financial conditions are recommended to monitor the defendant's employment and financial circumstances, as well as ensuring the defendant's income is being generated from legitimate means. Based on the defendant's history of mental illness and substance abuse, conditions for mental health and substance abuse treatment are recommended. As the instant offense involved possessing and manufacturing counterfeit credit cards, a condition for warrantless searches is recommended. Vocational services are recommended in order to help the defendant develop skills to assist him with obtaining gainful employment. A fine is not recommended due to the defendant's lack of financial resources.

## Voluntary Surrender:

The defendant is not an appropriate candidate for voluntary surrender as he has been detained since his arrest.

## Recommended Conditions of Supervised Release:

1. The defendant shall abide by the mandatory and standard conditions of supervised release.

2. The defendant shall provide any requested financial information to the probation officer.

3. The defendant shall not incur new credit charges or open additional lines of credit without approval of the probation officer.

4. The defendant shall submit to substance abuse testing, at any time, as directed by the probation officer. The defendant shall cooperatively participate in a substance abuse treatment program, which may include drug testing and inpatient/residential treatment, and pay for treatment services, as directed by the probation officer. During the course of treatment, the defendant shall abstain from the use of alcoholic beverages.

5. The defendant shall cooperatively participate in a mental health treatment program, which may include inpatient treatment, and pay for treatment services, as directed by the probation officer.

6. The defendant shall submit his person, residence, office, vehicle, or any property under his control to a warrantless search. Such search shall be conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release. Failure to submit to such a search may be grounds for revocation; the defendant shall warn any residents that the premises may be subject to searches.

7. The defendant shall participate in a vocational services program as directed by the probation officer, and pay for the program as directed by the probation officer. Such programs may include on-the-job training, job readiness training, and skills development training.


Respectfully Submitted,
Melissa A. Alexander
Chief U.S. Probation Officer

By:    Yashira M. Patton
      Sentencing Guidelines Specialist


Approved:

Odessa H. Baker                           09/07/2018
Supervisory U.S. Probation Officer        Date

**ADDENDUM TO THE PRESENTENCE REPORT**

**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**UNITED STATES V. DANYEL-ROY KIERAN LEMONS-KING,**
**DKT. 0418 1:17CR209-4**

## OBJECTIONS

### By the Government

The government has no objections.

### By the Defendant

The presentence report was disclosed on August 6, 2018. The defendant submitted objections via CM-ECF on August 20, 2018. Pleadings were due by August 27, 2018. As of the date of this addendum, no pleadings have been filed. The following objections remain unresolved:

**Objection #1:** (Facesheet and Paragraph 12) – The defendant objects his release status. He advised he was in custody in South Carolina from August 24, 2018, to December 20, 2018. He claims he was transferred into federal custody on December 20, 2018.

**Objection #2:** (Paragraph 26) – The defendant indicated he was provided no evidence or information regarding victim(s) damages.

**Objection #3:** (Paragraph 48) – The defendant advised he wishes the Court to consider placement with his cousin, Jesse Davenport, in Atlanta, Georgia.

## <u>Response by U.S. Probation Officer</u>

The defendant has not filed pleadings to support the unresolved objections; therefore, the probation officer stands by the presentence report as written.


                              Respectfully Submitted,
                              Melissa A. Alexander
                              Chief U.S. Probation Officer

                              _____
                       By:    Yashira M. Patton
                              Sentencing Guidelines Specialist


                              _____
                              09/07/2018
                              Date